IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-00044-01-CR-W-BP |
| ) | |
| EDWARD ALLEN STIEBER, ) | |
| ) | |
| Defendant. ) | |

**SENTENCING MEMORANDUM: MOTION AND
SUGGESTIONS IN MITIGATION OF SENTENCE**

COMES NOW the defendant, Edward Allen Stieber, by and through counsel, Ronna Holloman-Hughes, in accordance with Rule 32, Fed. R. Crim. P., and hereby requests the Court to consider a sentence of fifteen (15) years. In support, Mr. Stieber offers the following:

**BRIEF HISTORY**

Mr. Stieber entered a plea of guilty to two counts of attempted production of child pornography. The statutory range of punishment for the Court to consider is not less than 15 years and not more than 30 years on each count. These counts carry a mandatory period of supervised release of five years to life. The advisory guideline range as recommended by the U.S. Probation Office is 292-365 months of imprisonment.

**SUGGESTIONS SUPPORTING NON-GUIDELINE SENTENCE**

The advisory sentencing guidelines are a factor for the Court to consider but a district court may not begin with the presumption that those guidelines are reasonable. United States v. Alvizo-Trujillo, 521 F.3d 1015, 1018-1019 (8th Cir.2008) (citing United States v. Gall, 128 S.Ct. 586, 596-597 (2007) and United States v. Rita, 127 S.Ct. 2456 (2007)). In this case, a number

of mitigating factors would suggest that a sentence of fifteen years is sufficient, but not greater than necessary.

In imposing any sentence 18 U.S.C. § 3553 generally directs that the Court shall impose a sentence sufficient, but not greater than necessary. Among the factors for the Court to consider are the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford an adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. (See 18 U.S.C. § 3553(a)). An analysis of these factors demonstrates that a sentence of fifteen years is sufficient but not greater than necessary.

**The nature and circumstances of the offense and the history and characteristics of the defendant**

Mr. Stieber filmed teenage girls, unbeknownst to them, (until shown the by the government) while they were showering. It should be known that the girls acknowledged they knew Mr. Stieber, was often alone with him and that he never made any advances toward them. One of the teens described him as "not creepy".

Mr. Stieber is a forty-nine year old man. Mr. Stieber's childhood was unremarkable until he turned ten or eleven. At that time he began residing with his father and stepmother. As a consequence for what they considered, "babyish behavior", he was made to wear a diaper to school. Mr. Stieber had never received counseling as an adult to deal with the corresponding issues related to being a victim of abusive and cruel behavior as a child.

Mr. Stieber had a distinguished term in the United States Navy from 1986 – 1993. *See attached Exhibit.* During his service he was awarded the Coast Guard Special Operations Ribbon, the Sea Service Employment Ribbon, the Navy Unit Commendation (Awarded to any

unit for distinguishing itself in action against the enemy with outstanding heroism), the National Defense Service Medal (for service during active duty in the Persian Gulf War), the Southwest Asia Service Medal, For service in the Gulf War), with two Bronze Stars (for heroic achievement, heroic service in a combat zone), Kuwait Liberation Medal, and the First Good Conduct Medal for period ending June 23, 1991.

Mr. Stieber is divorced and has no kids. Prior to his surrender, Mr. Stieber was working as a production worker at the Excelsior Manufacturing in Brookfield, Missouri.

**Reflect the seriousness of the offense; to promote respect for the law, and to provide a just punishment for the offense and to protect the public from further crimes of the Defendant**

Mr. Stieber pled guilty to two counts. A sentence of fifteen years would adequately reflect the seriousness of the offense. The facts of this case demonstrate that a sentence of fifteen years is sufficient punishment for the offense.

Although research on recidivism rates for CP offenders is scarce, there is some. Additionally, there is a growing amount of research on recidivism rates for "sex offenders" in general. A review of some of the more notable studies can be instructive. What we find is that the recidivism rates for sex offenders, is much lower than what the general public perceives.

**Sexual Recidivism**

The watershed article in this area was published by Karl Hanson & Monique Boussiere in 1998.[1] Hanson and Boussiere collected and reviewed 61 follow-up studies to examine factors

---

[1] Hanson, Karl & Boussiere, Monique, Predicting Relapse: A Meta-Analysis of Sexual Offender Recidivism Studies, Journal of Consulting and Clinical Psychology, Vol. 66, No. 2, 348-362 (1998).

3

strongly related to recidivism among sexual offenders. This meta-analysis involved nearly 24,000 sex offenders (23,393). The overall recidivism rate for a 5 year follow-up period was only 13.4%.

In 2004, Karl Hanson embarked on a follow-up study to his 1998 meta-analysis.[2] This time a total of 95 different studies were examined involving more than 31,000 sexual offenders. The overall sexual recidivism rate for convicted sexual offenders was 13.7% over a 5-6 year period.

**Research on Age & Recidivism**

What is more striking is the effect of advanced age on sexual recidivism. There have been several studies in the past 10 years that have addressed this topic. The first study to review sexual recidivism and advanced age was done by Karl Hanson in 2001.[3] Dr. Hanson followed 4,673 convicted sex offenders for a five year period after their release from custody. In general, Dr. Hanson found that there was an inverse relationship between age of release and sexual recidivism. Specifically, it was determined that the sexual recidivism rate for the sex offender released after the age of 60 was 3.8%.

In 2006 three different studies were published reviewing the relations between recidivism and age in sex offenders. Fazel, Sjöstedt, Långström, and Grann (2006) followed all adult male sex offenders released from prison in Sweden from 1993 and 1997 (N=1,303) and recorded

---

[2] Hanson, Karl & Morton-Bourgon, Kelly, Predictors of Sexual Recidivism: An Updated Meta-Analysis, (2004)

[3] Hanson, Karl, Age and Sexual Recidivism: A Comparison of Rapists and Child Molesters, Sexual Abuse: A Journal of Research & Treatment (2001); also available at the Solicitor General Canada's Internet Site http://www.sgc.gc.ca

4

criminal convictions for an average of 8.9 years.[4] They divided their sample into age cohorts (<25;25-39;40-54;55+). Recidivism rates decreased significantly in older aged cohorts. In the <25 age group, sexual recidivism was 10.7%. In the 25-39 age group, the recidivism rate was 9.4%. The 40-54 age group recidivated at a rate of 5.6%. The sexual recidivism rate for 55+ was 6.1%.

David Thornton (2006) followed a large nationally representative sample (N=752) of sex offenders for a period of 10 years after their release from prison in the United Kingdom.[5] Dividing his sample by age cohort (<18;18-24;25-39;40-59;60+), he also found that the rate of sexual recidivism declined generally with age. Those in the 60+ category had a sexual recidivism rate over a 10 year period of only 4.3%. Importantly, Mr. Stieber will be at least the age of 60 when he is released from the Bureau of Prisons.

Finally, Hanson (2006) followed a very large sample (N=3,425; compiled over 8 separate samples) of sex offenders released from prison in North America and the United Kingdom.[6] Hanson calculated 5-year recidivism rates for different age cohorts (18-24;25-39;40-49;50-59;60+). Not surprisingly, he found that older sexual offenders have lower sexual recidivism rates than the Static-99 predicted. For those in the 60+ category, the sexual recidivism rate was

---

[4] Fazel, Seena; Sjostedt, Gabrielle; Langstrom, Niklas; Grann, Martin <u>Risk Factors for Criminal Recidivism in Older Sex Offenders</u>, Sexual Abuse: A Journal of Research and Treatment, 2006.

[5] Thornton, David, <u>Age and Sexual Recidivism: A Variable Connection</u>, Sexual Abuse: A Journal of Research and Treatment, Vol. 18 No. 2, 123-135 (2006).

[6] Hanson, Karl, <u>Does Static-99 Predict Recidivism of Older Sexual Offenders?</u>, Sexual Abuse: A Journal of Research and Treatment, Vol. 18 No. 2, 343-355 (2006).

Case 4:13-cr-00044-BP   Document 52   Filed 09/21/15   Page 5 of 12

2%.

**Sex Offender Treatment**

The Bureau of Prisons offers extensive sex offender treatment programs.[7] These programs provide treatment and specialized management services to inmates who are convicted of sex offenses. The goal of these programs is to reduce the incidence of sexual re-offending.

The BOP has specially designated Sex Offender Management Programs (SOMP). The SOMP is designed to provide services that minimize the inmate's risk for sexual re-offense. The SOMP employs psychologists and treatment specialists who perform specialized assessments of sexual offenders. These evaluations include risk assessments and diagnostic assessments of psychosexual and associated disorders.

After the evaluation is completed the SOMP offers Sex Offender Treatment Programs (SOTP) to inmates. The SOTP offers high-intensity programs for sex offender treatment. The SOTP provides cognitive-behavioral programs in a modified therapeutic community that has proven effective in reducing inmate recidivism. A modified therapeutic community in a prison setting stresses pro-social values and behaviors that are needed in the outside community.

Additionally, the Bureau of Prisons initiates a review of each sex offender case 18 months from their projected release date to determine whether civil commitment should be recommended for those inmates who have not fully and successfully participated in sex-offender treatment and who pose a future risk to society upon their release. If the BOP believes that an inmate poses a future risk it can recommend that the inmate be civilly committed pursuant to 18

---

7 *See* Bureau of Prisons "Sex Offender Program" Program Statement for description of the entire BOP Sex Offender Treatment and Management Services.

U.S.C. §4248.  The BOP conducts an exhaustive evaluation of every inmate with a goal of eliminating sexual reoffending upon release.

Clearly, the BOP has the programs necessary to provide Mr. Stieber with the treatment that he needs.  The BOP treatment will provide Mr. Stieber with the skills necessary to address that issues that were created when he was molested as a child.  Further, this treatment has proven effective in insuring that individuals like Mr. Stieber do not reoffend or pose a threat in the future.

### Deterrence

Additionally, research has consistently shown that an increase of sentence length does not reduce crime through deterrence.[8]  In other words, a sentence of 15 years will provide just as much marginal deterrence as a sentence of 30 years.

**Because it was enacted in a manner divorced from the institutional role of the Sentencing Commission, this Court is free pursuant to Kimbrough to reject Section 2G2.1 as unsound policy that lacks any basis in empirical study or national experience.**

Both the structure and legislative history of USSG §2G2.1 demonstrate that it constitutes bad policy, that the court is free to reject outright, pursuant to Kimbrough. Section 2G2.1 ratchets up almost every child pornography offense to nearly the statutory maximum, which effectively renders an offender's criminal history category obsolete.

---

[8] *See* Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime and Justice: A Review of Research (2006); David Weisburd et. al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes,* 33 Criminology 587 (1995); Andrew von Hirsch, et al, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999).

The guidelines are designed to base a sentencing range of two components: offense severity and criminal history. That Section 2G2.1 effectively trumps the criminal history category by increasing the majority of child porn sentences to the statutory maximum demonstrates that it is inconsistent with the overall structure of the guidelines as a whole.

In this case, Mr. Stieber's base offense level was enhanced by several specific offense characteristics, which apply in the vast majority of child pornography cases USSC, Use of Guidelines and Specific Offense Characteristics: Fiscal year of 2014.

For a first time offender, these enhancements alone produce a guideline range that exceeds the statutory maximum for child pornography as a matter of course. The high frequency of the application of these enhancements demonstrates that the guideline fails to adequately measure the severity of each offense because the vast majority of cases are punished at or near the statutory maximum. As such, this guideline functions in a way that violates the parsimony principle of 3553.

Mr. Stieber received a two level enhancement each victim being under the age of sixteen for a total of 4. He was also given a 5 point enhancement for a "pattern of behavior". Both enhancements seems duplicitous because the charge is attempted production of child porn therefore the base offense level takes into account that the victim was a minor and the grouping includes the fact that he committed the crime more than once. As noted above, the vast majority of cases would also be calculated at or near the statutory maximum for child pornography. Because every single case cannot be considered

8

deserving of the maximum punishment, this guideline fails to advance the statutory goals of sentencing.

A review of the legislative history of the PROTECT Act illuminates how such a skewed guideline came into being. The statutory minimum that apply in this case were enacted pursuant to a congressional directive by the PROTECT Act. USSG App. C, Amendment 664 (Reason for Amendment). The Commission increased the base offense levels for child pornography offenses to accommodate the increase in the statutory penalties by the PROTECT Act. Id.

Congress enacted these sentencing revisions without input from the judiciary, without research or study, and without time for comment or debate. Drafted by the Department of Justice, this legislation "directly revised various guidelines, an unprecedented action for Congress." United States v. Detwiler, 338 F. Supp. 2d 1166, 1170-71 (D. Or. 2004). Moreover, this legislation was enacted in a manner that avoided any input from the judiciary or the Sentencing Commission. The court in Detwiler explained:

> No advance notice was given, no hearing were held, and there was no opportunity for meaningful debate or to refute the arguments (and allegedly, misinformation) that were cited as justification for the Amendment. Although the Feeney Amendment directly impacted the Sentencing Commission, that body was not informed of the Amendment in advance, let alone consulted. [citations omitted]. The Judicial Branch was not consulted either.
> Id. at 1171.

Because these changes were not based on empirical study or national experience, this

9

Court has no principled basis to defer to this guideline range. See Kimbrough v. United States, 128 S. Ct. 558, 575 (2007) (sentencing court may disagree with the guidelines as unsound policy when range does not "exemplify the Commission's exercise of its characteristic Institutional roll") Gall,128 S. Ct. at 592 n.2 (not all guidelines are tied to "empirical evidence") Skye Phillips, Note, Protect Downward Departures: Congress and the Executive's Intrusion into Judicial Independence, 12 Journal of Law and Policy 947, 990 n. 216 (2004) (Sentencing Commission expressed concern that Act bypassed process of "review and analysis" that it was "uniquely qualified" to conduct). In short, this range was enacted in a manner that directly conflicts with the Court's rationale in Mistretta v. United States, which envisioned the Sentencing Commission as an independent expert body not subject to political pressure from the executive and legislative branches of government. 488 U.S. 361, 407-08 (1989).

Based upon the changes in the Protect Act, the Commission increased the base offense level of § 2.2G2.1 to 32 when it was previously 27, pursuant to The Protection of Children from Sexual Predator's Act of 1998.

## **CONCLUSION**

When determining the appropriate sentence the court is required to *impose a sentence sufficient but not greater than necessary*.  A review of Mr. Stieber's case in light of the sentencing factors enumerated in 18 U.S.C. § 3553 demonstrates that a sentence of fifteen years is well within the Court's discretion and warranted in this case.  The facts of the case demonstrate that Mr. Stieber was not armed and is not a risk to reoffend.  A sentence of fifteen years confinement reflects the seriousness of the offense while promoting respect for the law and providing a just punishment.  Further, a sentence of fifteen years provides adequate deterrence to criminal conduct while sufficiently protecting the public from further crimes.  For these reasons, Mr. Stieber requests that the court impose a sentence of fifteen years.

Respectfully submitted,

/s/ Ronna Holloman-Hughes
Ronna Holloman-Hughes
Assistant Federal Public Defender
818 Grand Avenue, Suite 300
Kansas City, Missouri 64106
(816) 471-8282

COUNSEL FOR DEFENDANT

**CERTIFICATE OF SERVICE**

In accordance with Rule 49(a), (b) and (d), Fed. R. Crim. P., and Rule 5(b), Fed. R. Civ. P., it is hereby certified that one copy of the foregoing Motion was electronically filed and sent to Teresa Moore, Assistant United States Attorney, Western District of Missouri, counsel for Plaintiff, 400 E. 9th St., 5th Floor, Kansas City, Missouri 64106, 21st day of September, 2015.

/s/ Ronna Holloman-Hughes
Ronna Holloman-Hughes